# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

WINSTON HENSLEY, individually and on
behalf of all others similarly situated,

        Plaintiff,

    v.

MOLSON COORS BEVERAGE COMPANY
USA LLC, et al.,

        Defendants.

Case No. 2:25-cv-01371-WCH

Honorable William C. Griesbach

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................... 1

II.    DISCUSSION ............................................................................................................ 2

      A.     Plaintiff Fails To Allege An Imprudent Process. .................................................. 2

      B.     Plaintiff Provides No Meaningful Benchmark. ..................................................... 4

            1.     Plaintiff's Selective and Rotating Cast of Comparators Undermines Plausible Imprudence. ................................................................... 7

            2.     Plaintiff's Underperformance Claims Are Deeply Flawed and Overstated. ................................................................................... 10

      C.     Plaintiff's Risk of Insurer Insolvency Allegations Are Irrelevant. ........................11

      D.     Plaintiff's Prohibited Transaction Claim Fails to State a Claim. ......................... 12

            1.     *Albert* is Still Good Law in the Wake of *Cunningham*. ............................ 12

            2.     Plaintiff's Prohibited-Transaction Claim Fails Under *Albert*. .................. 13

            3.     Plaintiff Has Not Pleaded An Injury And Lacks Article III Standing For His Prohibited Transaction Claim. ..................................... 14

      E.     Plaintiff's Derivative Duty-to-Monitor Claim Fails. ........................................... 15

III.    CONCLUSION ...................................................................................................... 15

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Abel v. CMFG Life Ins. Co.*,
No. 22-CV-449-WMC, 2024 WL 307489 (W.D. Wis. Jan. 26, 2024).......................................3

*Albert v. Oshkosh Corp.*,
47 F.4th 570 (7th Cir. 2022) ........................................................................................ *passim*

*Allen v. GreatBanc Tr. Co.*,
835 F.3d 670 (7th Cir. 2016) ..................................................................................................3

*Ashcroft v. Iqbal*,
556 U.S. 1030 (2008).............................................................................................................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................................4, 10

*Bogie v. Rosenberg*,
705 F.3d 603 (7th Cir. 2013) ..................................................................................................5

*Clinton v. Baxter Int'l Inc.*,
2025 WL 3470685 (N.D. Ill. Dec. 3, 2025)..........................................................................7, 8

*Cunningham v. Cornell University*,
604 U.S. 693 (2025)....................................................................................................12, 13, 14

*Davis v. Wash. Univ. in St. Louis*,
960 F.3d 478 (8th Cir. 2020) ..................................................................................................3

*E.E.O.C. v. Concentra Health Services, Inc.*,
496 F.3d 773 (7th Cir. 2007) ................................................................................................11

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014)...............................................................................................................11

*Glick v. Thedacare Inc.*,
No. 20-cv-1236, 2022 WL 3682863 (E.D. Wis. Aug. 25, 2022)..............................................4

*Hecker v. Deere & Co.*,
556 F.3d 575 (7th Cir. 2009) ..........................................................................................5, 6, 9

*Holmes v. Marion Cnty. Sheriff's Off.*,
141 F.4th 818 (7th Cir. 2025), reh'g denied, No. 22-3032, 2025 WL 2078828
(7th Cir. July 23, 2025)..........................................................................................................14

Case 2:25-cv-01371-WCG    Filed 05/01/26    Page 3 of 21    Document 35

*Hughes v. Nw. Univ.*,
595 U.S. 170 (2022)...........................................................................................................6

*Hughes v. Nw. Univ.*,
63 F.4th 615 (7th Cir. 2023) (*Hughes II*).....................................................2, 3, 5, 7

*Iannone v. AutoZone, Inc.*,
344 F.R.D. 319 (W.D. Tenn. 2023) ................................................................................10

*Jacobs v. Hackensack Meridian Health, Inc.*,
No. 25-cv-1272, 2026 WL 710229 (D.N.J. Mar. 13, 2026) ........................................2

*Jones v. Bock*,
549 U.S. 199 (2007)........................................................................................................14

*Lagafuaina v. Mitchell Int'l, Inc.*,
Case No. 3:25-cv-03018-DMS-DDL (S.D. Cal) ...........................................................12

*Lalonde v. Mass. Mut. Ins. Co.*,
728 F. Supp. 3d 141 (D. Mass. 2024) .............................................................................3

*Martin v. CareerBuilder, LLC*,
No. 19-cv-6463, 2020 WL 3578022 (N.D. Ill. July 1, 2020) ........................................3

*Matney v. Barrick Gold of N. Am.*,
80 F.4th 1136 (10th Cir. 2023) .......................................................................................9

*Meiners v. Wells Fargo & Co.*,
898 F.3d 820 (8th Cir. 2018) ...................................................................................3, 6, 9

*Miller v. AutoZone, Inc.*,
2020 WL 6479564 (W.D. Tenn. Sept. 18, 2020).........................................................12

*Patterson v. Morgan Stanley*,
No. 16-cv-6568 RJS, 2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ..............................3

*Rodriguez v. Hy-Vee, Inc.*,
No. 4:22-cv-00072, 2022 WL 16648825 (S.D. Iowa Oct. 21, 2022) ..........................11

*Wood v. Prudential Ret. Ins.*,
No. 3:15-cv-1785, 2016 WL 5940946 (D. Conn. Sept. 19, 2016)................................7

*Woznicki v. Aurora Health Care Inc.*,
2022 WL 1720093 (E.D. Wis. May 27, 2022).............................................................10

**Other Authorities**

*Advisory Council Report on Stable Value Funds and Retirement Security in the Current Economic Conditions*, https://www.dol.gov/agencies/ebsa/about-ebsa/about-us/erisa-advisory-council/2009-stable-value-funds-and-retirement-security-in-the-current-economic-conditions...............................................................................6

Case 2:25-cv-01371-WCG    Filed 05/01/26    Page 5 of 21    Document 35

## I. **INTRODUCTION**

The opposition fails to save the Amended Complaint. Plaintiff nowhere substantiates his bald claim that Defendants "ignore binding precedent that forecloses virtually all their arguments." (ECF 34 at 10.) In fact, at no place in the 171 paragraph Amended Complaint or the opposition does Plaintiff allege an imprudent fiduciary process. Instead, Plaintiff asks the Court to adopt a legally deficient standard which would infer imprudence from a shifting set of comparisons to materially different investments. That approach—not Defendants' arguments—is foreclosed by governing law.

As detailed in the Motion, ERISA's duty of prudence requires a plaintiff to plausibly allege conduct outside the range of reasonable fiduciary judgment under the circumstances then prevailing. Plaintiff does not do so. He concedes he has no knowledge of Defendants' process and pleads no alleged process failure. He nowhere pleads that at the time in question there were better performing comparable products. Indeed, Plaintiff does not even offer support for the suitability of his comparators. He wrongly claims pleading such facts is unnecessary at the pleading stage. The inapt nature of the comparators is apparent from a document Plaintiff cites in his pleading. This document reflects that his comparators differ materially from the Fidelity SVF in structure, risk profile, and contractual features. Alleging differently designed products performed differently does not supply a meaningful benchmark or support an inference of imprudence.

Plaintiff's remaining theories fare no better. He cannot plausibly plead the Fidelity SVF is imprudent based on speculative risk of loss regarding a business that Plaintiff's own exhibit reflects was sold by the Plan's wrap provider to a third-party in 2022. Plaintiff identifies no reason why that entity's failure now would impact its former owner, let alone the Plan. Plaintiff also cannot save his prohibited transaction claims, as he fails to plead the level of specificity required

1

by the Seventh Circuit, affirmatively alleges the transactions fell under a lawful exemption, and fails to plead a concrete injury.

The Amended Complaint should be dismissed with prejudice.

## II.  DISCUSSION

### A.  Plaintiff Fails To Allege An Imprudent Process.

Plaintiff tries to excuse himself from his well-settled pleading obligations. He contends the plausibility of his comparators is not an issue for a motion to dismiss. (ECF 34 at 22–23.) This position has been rejected, including in another case brought by Plaintiff's counsel. *Jacobs v. Hackensack Meridian Health, Inc.*, No. 25-cv-1272, 2026 WL 710229, at *9–10 (D.N.J. Mar. 13, 2026). In *Jacobs*, the court rejected as "untenable" the argument that challenges to the suitability of comparators in a motion to dismiss presented "premature" fact disputes. *Id.* at *11. In rejecting these arguments, *Jacobs* found the standard Plaintiff urges here would allow "a plaintiff [to] use any better-performing fund as an alleged comparator to survive a motion to dismiss as long as they allege that those two funds are substantially similar." *Id.* The court reasoned it could not simply deem a fund comparable when, other than putative crediting rates, "the Court ha[d] little to no information to rely on." *Id.* at *12. The court thus dismissed the SVF underperformance claim in *Jacobs* because it found the GICs used in the complaint could not be a meaningful benchmark for a product with different risk and return profiles. *Id.* at *11–12.

*Jacobs* squares perfectly with the pleading obligations set forth in *Hughes II*. There, applying *Albert*, the Seventh Circuit re-affirmed that plaintiffs relying on comparisons to claim imprudence must make allegations supporting the basis for comparison. *See Hughes v. Nw. Univ.*, 63 F.4th 615, 632 (7th Cir. 2023) (*Hughes II*). In *Hughes II*, the plaintiffs (who alleged excessive recordkeeping fees) satisfied their burden by alleging that the putative comparator recordkeepers provided the same services (in both scope and quality) and so differed only in price. *Id.* Because

the identity of their services made "fungible" comparators, *Hughes II* found its plaintiffs stated a plausible claim through price comparisons. *Id.*

This underscores that for Plaintiff to plead a claim, he must plausibly plead similar "fungibility." Namely, he must point to comparable SVFs sharing the same goals and structure as the Fidelity SVF and thus only differ in terms of ultimate performance. Plaintiff's pleadings are devoid of such evidence.

Plaintiff also cannot escape his obligation to plead "fungibility" by claiming he cannot know the requisite facts absent discovery. This argument has been rejected by other courts which require a party to plead facts that "tell a plausible story." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016); *Martin v. CareerBuilder, LLC*, No. 19-cv-6463, 2020 WL 3578022, at *5 (N.D. Ill. July 1, 2020) ("Plaintiff argues . . . they should get a crack at discovery before the Court dismisses this complaint. This argument has it backwards."). A party cannot (as Plaintiff attempts) plead an imprudent process from alleged underperformance alone. *See Hughes v. Nw. Univ.*, 63 F.4th at 630; *Abel v. CMFG Life Ins. Co.*, No. 22-CV-449-WMC, 2024 WL 307489, at *5 (W.D. Wis. Jan. 26, 2024); *Albert v. Oshkosh Corp.*, 47 F.4th 570, 580-81 (7th Cir. 2022); 5; *Patterson v. Morgan Stanley*, No. 16-cv-6568 RJS, 2019 WL 4934834, at *17 (S.D.N.Y. Oct. 7, 2019); *Lalonde v. Mass. Mut. Ins. Co.*, 728 F. Supp. 3d 141, 156–57 (D. Mass. 2024).

Rather, to support a plausible imprudence claim, a plaintiff must provide "detailed allegations" showing there is a "sound basis" for his comparisons. *Albert,* 47 F.4th, 581–82 (quoting *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 484 (8th Cir. 2020) and *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018)). Plaintiff must plead "specific factual allegations" that the comparators "hold similar securities, have similar investment strategies, and reflect a similar risk profile" to the Fidelity SVF. *Abel*, 2024 WL 307489, at *4.

3

Plaintiff pleads no such facts. He claims the Amended Complaint should survive dismissal because it contains "well pled inferences of deficient fiduciary processes." (ECF 34 at 17.) Tellingly, while Plaintiff asserts the Motion "disregard[s]" those process allegations, he provides no citation to where they can be found. (*Id.*) Instead, he cites to fact discussions in other cases, where courts found those plaintiffs had alleged specific process failures. (*See id.* at 17-18.) Plaintiff's reliance on these cases—including this Court's decision in *Glick v. Thedacare Inc.*, No. 20-cv-1236, 2022 WL 3682863 (E.D. Wis. Aug. 25, 2022)—is thus misplaced. In *Glick*, the plaintiff made specific allegations of process failures, including that the defendants "did not regularly solicit competitive bids . . . ." *Id*. at \*5. Here, the Amended Complaint contains no such allegations. Plaintiff admits he has no knowledge of Defendants' process. (ECF 24 ¶ 71.) He pleads only that the Plan held substantial assets during the class period (ECF 24 ¶ 137) and speculates, as a result, Defendants could have demanded higher crediting rates. (ECF 24 ¶¶ 136, 138.) Plaintiff cannot rely on speculation to state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (plaintiff's "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'") Plaintiff's claim thus fails as a matter of law.

### B. Plaintiff Provides No Meaningful Benchmark.

Plaintiff's allegations of underperformance rest on flawed comparison of the Fidelity SVF to a cherry-picked sampling of materially distinguishable products. Rather than suggesting imprudence, Plaintiff's allegations suggest only that differently designed investments perform differently. Plaintiff attempts to refute those differences first by claiming his Amended Complaint went "into detail" about how the Fidelity SVF is "substantially identical" to the putative comparators. (*See* ECF 34 at 13-14.) Review of the three complaint paragraphs he cites (ECF 24 ¶¶ 111-12, 135) quickly dispels this suggestion, as these paragraphs provide only generalized descriptions of stable value fund characteristics. They provide no explanation as to why sharing

those characteristics would make his comparators meaningful under the standards established by *Albert* and *Hughes II*.

Lacking allegations to support the suitability of his comparators, Plaintiff attempts to dismiss the significance of Defendants' arguments as "factual disputes" that cannot be considered at this stage. But Plaintiff cannot shirk his burden to plead a legally cognizable claim, especially where, as here, his characterization of his comparators as "substantially identical" are refuted by documents he relies on in the Amended Complaint. *Hughes II*, 63 F.4th at 629-630.

As detailed in the Motion (ECF 30), the ERISA Advisory Council Report ("EACR") cited in the Amended Complaint identifies significant differences between products broadly classified as SVFs. (*See* ECF 30 at 13-14.) Plaintiff's primary response to those differences (which refute his assertions that all SVFs are "fungible" and only differ in crediting rate) is that the Court should disregard the EACR. (ECF 34 at 24.) Plaintiff cannot cite external sources in his Amended Complaint and then ask the Court to ignore those same sources when he realizes they actually dispose of his theory. As he concedes in his opposition, Plaintiff originally cited the EACR to support his foundational premise that "all SVFs are 'a conservative, fixed income investment vehicle that provide a relatively stable rate of return.'" (ECF 34 at 11.) Because the comparability of SVFs—the point on which Plaintiff relies on the EACR for support—is at the heart of Plaintiff's claim, the Court may examine the accuracy of that citation. *See Hecker v. Deere & Co.,* 556 F.3d 575, 582 (7th Cir. 2009) (noting court can consider on a motion to dismiss a concededly authentic document cited in the complaint and central to the claim presented). And when an exhibit incorporated into the complaint conflicts with the complaint, "the exhibit ordinarily controls." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

The EACR disproves Plaintiff's claims by detailing the differences between traditional GICs, separate accounts, and synthetic GICs. While Plaintiff would prefer the Court ignore the EACR, there is no legal basis for the Court to do so. *Hecker*, 556 F.3d at 582.

Plaintiff also purports to dispute that the EACR suggests traditional and synthetic GICs use different processes for setting crediting rates. (*See* ECF 34 at 25.[1]) This position fails as the EACR specifically says traditional GICs receive crediting rates set by the insurer, whereas, in a synthetic GIC, the crediting rate is set by formula "relative to a portfolio of assets held in an external trust."[2] Further, Plaintiff does not dispute that plans with synthetic GICs own the underlying assets and have protection against insurer default that does not exist in traditional GICs, where the insurer owns the assets. The EACR clarifies that synthetic and traditional GICs are not fungible because they set crediting rates using different methodologies. (*See* ECF 30 at 10,)

Different types of SVFs are also not meaningful benchmarks as they carry different risk-reward tradeoffs. *Meiners*, 898 F.3d at 823 ("The fact that one fund with a different investment strategy ultimately performed better does not establish anything about whether the [Plan's funds] were an imprudent choice at the outset."). To allow Plaintiff to allege the Fidelity SVF was imprudent because the fiduciaries did not pursue modest crediting rate increases by offering a fundamentally different investment would fail to "give due regard to the range of reasonable judgments a fiduciary may make." *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022).

---

[1] Plaintiff mischaracterizes Defendants' argument as "stat[ing] that Synthetic GICs do not use formulas set by insurers and cannot be negotiated by prudent fiduciaries." (ECF 34 at 25.) Defendants did not make this assertion. Defendants instead pointed out that the EACR explains that the rates for synthetic GICs are set formulaically based directly on the performance of the underlying assets. (*See* ECF 30 at 10.)

[2] ERISA Advisory Council, *Advisory Council Report on Stable Value Funds and Retirement Security in the Current Economic Conditions*, Emp. Benefits Sec. Admin. (2009), https://www.dol.gov/agencies/ebsa/about-ebsa/about-us/erisa-advisory-council/2009-stable-value-funds-and-retirement-security-in-the-current-economic-conditions.

Finally, Plaintiff's hindsight argument is a red herring. While he alleges crediting rates are determined "in advance," (ECF 34 at 19), he does so based on a quotation from the fact summary in *Wood v. Prudential Ret. Ins*., No. 3:15-cv-1785, 2016 WL 5940946, at *1 (D. Conn. Sept. 19, 2016). That summary described the specific contract at issue there, not all SVFs generally. It thus says nothing about Defendants' ability to prospectively know rates for the Fidelity SVF or his putative comparators. Indeed, belying his suggestion that his claims turn on information that could be known in advance, Plaintiff relies exclusively on hindsight-based crediting rates calculations, using Form 5500 data to calculate after-the-fact approximations of the crediting rates various plans received each year.

### 1.     Plaintiff's Selective and Rotating Cast of Comparators Undermines Plausible Imprudence.

Plaintiff cannot save his comparators by citation to *Clinton v. Baxter Int'l Inc*., 2025 WL 3470685 (N.D. Ill. Dec. 3, 2025). (*See* ECF 34 at 24-26.) As an initial matter, *Clinton* is not binding on this Court, and Plaintiff cannot use it to bypass the Supreme Court's ruling in *Hughes* or the subsequent Seventh Circuit cases setting his pleading burden.

Regardless, *Clinton* also does not support Plaintiff. *Clinton* dismissed a claim nearly identical to the instant claim, and the *dicta* Plaintiff cites here saved no part of that claim. The *Clinton* court was not asked to consider a plaintiff's direct citation to information belying the pleadings. Here in contrast, the Amended Complaint incorporates the EACR, a document that detail significant distinctions among SVFs that bear directly on crediting rates and comparability.

Plaintiff is incorrect that the "only reason for dismissal in *Clinton* was the total lack of any year-over-year comparators which is not at issue here." (ECF 34 at 24.) In *Clinton*, the court dismissed the complaint as it found to state a claim of imprudence based on comparison to alleged superior performers, a plaintiff must "***show—at minimum***—that there were year-in, year-out

better-performing alternatives that cast doubt on the . . . process for monitoring and renewing its own funds." *Clinton*, at *7 (emphasis added). Here, Plaintiff cites no comparators that cast such doubt. Rather, as in *Clinton*, he impermissibly relies on cherry picking to identify a "rotating cast" of higher-performing funds without a meaningful benchmark. *Id.*

Plaintiff does not dispute that the bulk of his comparators here are functionally identical to the universe that was *dismissed* for failing to state a claim in *Clinton*, because they did not provide a meaningful year-in, year-out benchmark. What's different, then, is his addition of two funds— the SVFs in the AOIC Plan and the Shands Plan— which he claims outperformed the Fidelity SVF in all years. (*See* ECF 34 at 14.) He claims that, because he uses these two funds "year-in, and year-out," he states a viable claim under *Clinton*. But *Clinton* never held that the suitability of a year-in, year-out comparator could not be examined at the pleading stage and, as discussed above, *Albert* and *Hughes II* make clear that this examination must occur. Such analysis confirms that neither the AIOC nor the Shands Plan are a meaningful comparator for the Fidelity SVF.

To begin with, Plaintiff does not dispute that the fund in the AOIC Plan is a traditional, general account GIC. (ECF 34 at 26.) This is fatal, given the differences the EACR highlights between traditional and synthetic GICs which make the former an implausible benchmark.

Plaintiff similarly fails to rebut that the VALIC fund is *not* the fund identified as an SVF in the Shands Plan's Form 5500 (the SVF is the Lincoln Stable Value Account). Instead, Plaintiff cites to a portion of that same Form 5500 that says the plan includes a "portfolio[] of investment contracts," including both the "the Lincoln Stable Value Account" and two VALIC funds. (ECF 34 at 14). In reality, the VALIC fund cited in the Amended Complaint represented a miniscule 0.03% of the assets in that "portfolio." (*See* ECF 30-2 at 7, 11, 15.[3])

---

[3] As the Form 5500 demonstrates, the contract Plaintiff cited as a comparator held just $27,215 of the $87,618,305 in the "portfolio" of investment contracts in the Shands Plan at the end of 2023. (ECF 30-2 at 15.)

The VALIC fund is also miniscule in comparison to the Fidelity SVF. At the end of 2023, the VALIC fund held just over $27,000, from just 43 participants, while the Fidelity SVF held over $1.9 billion. (ECF 30-2 at 13-15; ECF 24, ¶ 11.) Reliance on a comparator of a grossly different size fails to state a meaningful benchmark. *See Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1156–57 (10th Cir. 2023) (granting motion to dismiss where "comparators" included only materially smaller plans, despite allegation that large plans should be able to obtain favorable terms; court held where plaintiff "proceeds by way of comparison, [] he has the burden to provide meaningful benchmarks").

The differences between the Fidelity SVF and the VALIC product are not limited to their size. The fixed-return VALIC contract contains significant restrictions, including on participants' ability to withdraw their money from the fund. (*See* ECF 30 at 18.) The Amended Complaint pleads no such restrictions for the Fidelity SVF. (*See generally* ECF 24.) Plaintiff does not deny this difference. Instead, with no explanation, he claims it is "nugatory" and derides it for being based on an "outdated" prospectus. (ECF 34 at 14.) But though it was published in 2007, Plaintiff identifies *nothing* outdated in the prospectus.[4] More telling, Plaintiff offers no facts as to why this substantiated difference between the funds does not negate the claim of a "meaningful benchmark." Nor can he. A fund requiring participants to surrender access to their assets for a longer duration than the Fidelity SVF would be expected to provide greater return in exchange for those liquidity restrictions. This difference in characteristic eliminates this "comparator." *See Meiners*, 898 F.3d at 823 (that a fund with different characteristics performed better does not

---

[4] Notably, Plaintiff does not express any concerns that that the EACR, issued in 2009, might similarly be "outdated." Further, *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009) affirms it is appropriate to consider the prospectus at this stage. In *Hecker*, the plaintiff objected to the District Court's inclusion of prospectuses that were (as here) not attached to the complaint. *See id.* at 582. The Seventh Circuit rejected that argument and held that, while not attached, they "were publicly available documents" and could be considered on a motion to dismiss. *Id.* at 582–83.

establish the plan's funds were imprudent). The VALIC fund does not provide a "meaningful comparison." It is just another cherry-picked data point that is not probative of the Fidelity SVF's performance.[5]

### 2. Plaintiff's Underperformance Claims Are Deeply Flawed and Overstated.

Plaintiff has no response to Defendants' argument that Plaintiff's approach to calculating crediting rates is unreliable and mathematically inaccurate. Rather, he attempts to shift the burden to Defendants, averring that Defendants "do not identify which rates are incorrect, how they are incorrect, or what the correct figures should be." (ECF 34 at 27.) That is not how the Federal Rules work. It is Plaintiff's burden to plead facts that plausibly support a claim to relief. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 1030, 678 (2008). Because his claim depends on comparing crediting rates he calculated, his pleading must support that those calculations are plausibly correct. *Woznicki v. Aurora Health Care Inc.*, 2022 WL 1720093, at *3 (E.D. Wis. May 27, 2022) (noting that even at the pleading stage, it is "inappropriate" to rely on calculations that are "facially and demonstrably wrong"). Plaintiff cannot state a plausible claim by relying on bad math.

Plaintiff also ignores Defendants' argument that he employed misleading percentage-based framing to magnify nominal crediting rates differences. The differences between the Fidelity SVF's crediting rates and the ones Plaintiff calculates for his putative comparators are far smaller than his pleading suggests. (*See* ECF 24 ¶ 131 (asserting Fidelity SVF underperformed by 54.06% where Plaintiff's calculations only alleged Fidelity SVF's crediting rate was 1.09% and 1.92% lower than the putative comparators).) Courts recognize that such comparisons are "misleading"

---

[5] The suggestion that *Iannone v. AutoZone, Inc.*, 344 F.R.D. 319 (W.D. Tenn. 2023) supports their cherry-picking, (ECF 34 at 24), misreads that decision. In *Iannone*, the court specifically criticized reliance on cherry-picked data. *Id.* at 335. While the court declined to exclude the at-issue expert report from a bench trial, the court did so based on its own ability (in a bench trial) to weigh evidence appropriately, not because cherry-picked data is probative. *Id.*

and thus not suggestive of imprudence. *See, e.g., Rodriguez v. Hy-Vee, Inc.*, No. 4:22-cv-00072, 2022 WL 16648825, at *2 n.3 (S.D. Iowa Oct. 21, 2022).

### C. Plaintiff's Risk of Insurer Insolvency Allegations Are Irrelevant.

The opposition offers nothing to support Plaintiff's insolvency-based theory of imprudence. He impermissibly relies on speculation, ignores the built-in protections offered by the structure of the Fidelity SVF, and fails to explain how the entity he claims is at risk of insolvency (Prudential Retirement Insurance and Annuity Company ("PRIAC")) impacts the Plan *since it is no longer owned by an entity that insures the Fidelity SVF*.

The opposition confirms that Plaintiff's insolvency allegation rests on speculation of what might (but might not) happen in the future. Plaintiff does not dispute that the Amended Complaint alleges no wrap-provider default, no failure to perform, no inability to honor contractual guarantees, and no denial of liquidity at contract value. He instead only argues that exposure to insolvency risk renders Defendants' conduct imprudent. (ECF 34 at 11-12.) That contention misstates controlling law. The duty of prudence is assessed based on known facts and reasonable judgments at the time—not on speculative future possibilities. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). Courts routinely reject claims premised on "what *could* go wrong" type allegations absent allegations that fiduciaries ignored concrete, existing risks. *See E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).

Moreover, in the hypothetical event of a future insurer default, Plaintiff fails to confront the undisputed protection offered by the structure of the Fidelity SVF. Plaintiff does not dispute that, as a synthetic GIC, the Plan owns all the underlying assets in the Fidelity SVF. Because the ownership of the SVF rests with the Plan, even if an insurer fails, the Plan's investment would not be impacted. Moreover, the Fidelity SVF is insured by multiple wrap providers, further minimizing

11

the risk of default by any one of them. It is because of these structural protections (underlying asset ownership and wrap diversification) that synthetic GICs are widely recognized as the lowest-risk form of stable value investment. *See Miller v. AutoZone, Inc.*, 2020 WL 6479564, at \*5 (W.D. Tenn. Sept. 18, 2020). Plaintiff's counsel himself has made this argument in other pleadings. *See Lagafuaina v. Mitchell Int'l, Inc.*, Case No. 3:25-cv-03018-DMS-DDL (S.D. Cal), Compl., ECF 1 at ¶ 83 (characterizing synthetic GICs as less risky than traditional GICS as the former have with multiple insurers and plan-ownership of underlying assets).

Most confounding are Plaintiff's claims of insolvency aimed at PRIAC. As explained in the Motion, PRIAC is not the Prudential entity that is a wrap provider for the Fidelity SVF. (ECF 30 at 27-29). That wrap provider is Prudential Insurance Company of America ("Prudential"). (ECF 30 at 21–22.) In the opposition, Plaintiff explains (and attaches evidence to support) that Prudential sold PRIAC to Empower in 2022. (ECF 34 at 12; ECF 34-1.) Plaintiff does not dispute the distinction between the two Prudential entities, arguing only that PRIAC was once a subsidiary of Prudential. (ECF 34 at 12.) But the document attached to the opposition confirms the insolvency allegations in the Amended Complaint are aimed at PRIAC, the entity now owned by Empower. (ECF 24 ¶¶ 94–107.) Plaintiff fails to explain how speculative risk of a former subsidiary that was sold four years ago, impact Prudential's present risk profile.

### D. Plaintiff's Prohibited Transaction Claim Fails to State a Claim.

Plaintiff is eager to defend his conclusory prohibited transaction claim by invoking the minimal pleading burden he asserts was set by the Supreme Court in its recent *Cunningham* decision. Because he misstates *Cunningham,* his entire theory falls like a house of cards.

#### 1. *Albert* is Still Good Law in the Wake of *Cunningham*.

The opposition claims a party does not need to meet the pleading standard proffered in *Albert*, as *Albert* is no longer good law after *Cunningham*. (ECF 34 at 34-35.) That is wrong. Both

cases remain good law for the purposes cited by Defendants. *Cunningham* did not address the pleading standard under § 1106. Rather, it only addressed whether an ERISA plaintiff must plead facts negating statutory exemptions at the pleading stage. *See Cunningham v. Cornell University,* 604 U.S. 693, 693 (2025). The Supreme Court held pleading § 1106 claims does not require pleading around § 1108 exemptions. *Id.*

Where *Cunningham* focused on the interaction between §§ 1106 and 1108, *Albert* focused only on what a party needs to plead to state a claim under § 1106(a), without reference to § 1108. Considering § 1106(a), alone, *Albert* held that pleading the existence of routine payments for plan services does not state a violation of § 1106(a). *See* 47 F.4th at 585. As the Seventh Circuit explained, a contrary reading of § 1106(a) would produce "absurd results," produce lower returns and higher costs, and leave participants in a worse position. *Id.* at 585–86. *Cunningham* did not overrule or otherwise disturb *Albert. Albert* thus remains the binding standard for § 1106(a) claims in the Seventh Circuit.

**2.      Plaintiff's Prohibited-Transaction Claim Fails Under *Albert*.**

Plaintiff does not argue that the Amended Complaint meets the pleading standard set by *Albert*. Instead, he acts as if it does not exist. His primary argument is that § 1106(a) is implicated whenever a plan pays compensation to a party in interest, such that nothing more is required at the pleading stage. *Albert* directly foreclosed this argument. There, the Seventh Circuit held that routine payments by plan fiduciaries to third parties in exchange for plan services do not implicate ERISA § 1106. 47 F.4th at 584–85. But that is all Plaintiff alleges. (ECF 24 ¶¶ 17, 146, 167–70) (alleging Fidelity received compensation for providing stable-value investment services to the Plan).

And while *Cunningham* makes clear that Plaintiff need not plead around affirmative defenses, it does not mean Plaintiff can survive dismissal where he nonetheless pleads an

13

affirmative defense in his complaint. Here, in describing his alleged violation of § 1106(a), Plaintiff pleads that the challenged transactions were "exempt party-in-interest transactions," quoting that characterization from the Plan's Form 5500. (ECF 24 ¶ 17 n.6; ¶ 143 n.19.) It is settled law that a defendant may obtain dismissal under Rule 12(b)(6) where an affirmative defense appears on the face of the complaint. *Holmes v. Marion Cnty. Sheriff's Off.*, 141 F.4th 818, 822 (7th Cir. 2025), reh'g denied, No. 22-3032, 2025 WL 2078828 (7th Cir. July 23, 2025) citing *Jones v. Bock*, 549 U.S. 199, 215 (2007) (there exists a narrow and pragmatic exception to the general rule that affirmative defenses lead to dismissals under Rule 12(c) rather than Rule 12(b)(6): if the affirmative defense is clear from the face of the complaint, the court may dismiss under Rule 12(b)(6) instead.). While *Cunningham* clarified the balance between § 1106(a) and 1108, it did not free Plaintiff from the consequences of his own pleading.

### 3. Plaintiff Has Not Pleaded An Injury And Lacks Article III Standing For His Prohibited Transaction Claim.

Nothing in the opposition saves this claim from the admonition in *Cunningham* that district courts can "deal with barebones § 1106(a)(1)(C) suits" by enforcing Article III's injury-in-fact requirement. *See Cunningham*, 604 U.S. at 1032.

Here, Plaintiff's conclusory assertions that he paid "unjustified" and "excessive" fees (ECF 34 at 31) does not meet his burden to establish Article III to pursue his prohibited transaction claim. To begin with, he pleads the payments to Fidelity were "exempt party-in-interest transactions," (ECF 24 ¶ 17 n.6; ¶ 143 n.19), and thus inherently lawful. *See* 29 U.S.C. § 1108. Under such facts, Plaintiff cannot plausibly claim to have been injured by lawful conduct.

Plaintiff also fails to show he was injured by paying fees to Fidelity to invest in the Fidelity SVF. While he repeatedly alleges that Defendants should have replaced the Fidelity SVF with other stable value products, he nowhere identifies how much he paid in fees for the Fidelity SVF,

14

what the fees were for any of his preferred alternatives, or claim he would have paid less had those funds instead been in the Plan.

As he fails to plead an injury he lacks standing to pursue this claim.

### E. Plaintiff's Derivative Duty-to-Monitor Claim Fails.

For reasons detailed in Defendants' Motion and herein, because Count II is a derivative claim and Count I should be dismissed with prejudice, Count II should also be dismissed.

## III. CONCLUSION

For the reasons set forth above and in Defendants' Motion to Dismiss and Memorandum of Law in Support, the Amended Complaint should be dismissed in its entirety, with prejudice.

DATED: May 1, 2026                         Respectfully submitted,

                                           SEYFARTH SHAW LLP

                                           By:   _/s/ Sam Schwartz-Fenwick_
                                               Sam Schwartz-Fenwick
                                               Sschwartz-fenwick@seyfarth.com
                                               Thomas M. Horan,
                                               thoran@seyfarth.com
                                               SEYFARTH SHAW LLP
                                               233 South Wacker Drive, Suite 8000
                                               Chicago, Illinois  60606-6448
                                               Telephone:      (312) 460-5000
                                               Facsimile:      (312) 460-7000

                                           *Counsel for Defendants Molson Coors
                                           Beverage Company USA LLC Governance
                                           Committee and Molson Coors Beverage
                                           Company USA LLC Benefit Plan Investment
                                           Subcommittee*