# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

WINSTON HENSLEY, individually and
on behalf of all others similarly situated,

        Plaintiff,

        v.                                Case No. 25-C-1371

MOLSON COORS BEVERAGE COMPANY
USA LLC GOVERNANCE COMMITTEE, et al.,

        Defendants.

---

## DECISION AND ORDER GRANTING MOTION TO DISMISS

---

Plaintiff Winston Hensley, a participant in the Molson Coors Beverage Company USA LLC Retirement and Savings Plan, brought this putative class action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(2), on behalf of himself and others similarly situated, against Defendants Molson Coors Beverage Company USA LLC (Molson Coors), the Molson Coors Governance Committee, the Molson Coors Benefit Plan Investment Subcommittee, and John Does 1–20 for breach of their fiduciary duties. This court has jurisdiction pursuant to 28 U.S.C. § 1331. The case is before the court on Defendants' motion to dismiss the First Amended Complaint (FAC) for failure to state a claim under Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the motion will be granted.

## BACKGROUND

Molson Coors manufactures, markets, and sells beer and other malt beverage products worldwide. Molson Coors sponsors a retirement benefit plan (the Plan) for its employees. FAC ¶ 27, Dkt. No. 24. The Plan is a "defined contribution" 401(k) savings plan that enables eligible participants to make tax-deferred contributions from their salaries to the Plan. *Id.* ¶ 2; *see*

*generally id.* ¶¶ 53–58. During the relevant Class Period, the Plan had over $1.5 billion in assets under management and over 9,700 plan participants. *Id.* ¶¶ 10–12. The Plan's assets are managed by the Governance Committee, which has delegated to the Investment Subcommittee the responsibility of monitoring the management and investment of the Fund. The Governance Committee acts with the Investment Subcommittee to direct the Trustee with respect to the investment of the Fund. Because the Governance Committee, the Investment Subcommittee, and their members exercise discretion over the management and disposition of the Plan assets, they are considered fiduciaries of the Plan within the meaning of 29 U.S.C. § 1002.21(A). *Id.* ¶¶ 33–34. Plaintiff is a former employee of Molson Coors who participated in the Plan during his employment. *Id.* ¶ 24.

The FAC alleges that Defendants breached their fiduciary duty to Plan participants, including Plaintiff, by maintaining the Fidelity Stable Value Fund (Fidelity SVF) as an investment option in the Plan. The Fidelity SVF, according to the FAC, is a "synthetic investment contract" that carried significantly more risk and provided a significantly lower rate of return than other comparable funds that Defendants could have made available to Plan participants. *Id.* ¶ 14. The FAC further alleges that Plaintiff invested in the Fidelity SVF in the Plan and suffered injury to his Plan account due to the significant underperformance of the Fidelity SVF. *Id.* ¶ 24. Plaintiff seeks damages on behalf of himself and all other participants who invested in the Fidelity SVF for the difference between what their investments earned and what they should have earned had Defendants properly exercised their fiduciary duties.

A "stable value fund" (SVF), like the Fidelity SVF, is a conservative, fixed-income investment vehicle that provides a relatively stable rate of return. *Id.* ¶ 77. SVFs can be managed via guaranteed insurance contracts (GICs), "in which the fund manager holds or invests in a single

2

group annuity contract issued directly to the retirement plan and the plan sponsor receives a direct guarantee of principal and accrued interest from the issuer." *Id.* ¶ 78. GICs are issued by insurance companies in the form of a fixed annuity contract and provide for a guaranteed rate of return or "crediting rate" during a specified period. *Id.* ¶ 79. In addition to the allegation that the Fidelity SVF provided lower crediting rates than comparable SVFs, the FAC alleges that the insurance companies that issued the GICs for the Fidelity SVF benefitted significantly from participants' investments at the participants' expense. *Id.* ¶ 16. Finally, the FAC alleges that Defendants engaged in prohibited transactions by allowing Fidelity to benefit from its provision of services to the Plan by receiving excessive compensation for managing the Fidelity SVF. *Id.* ¶ 17. Based on these allegations, the FAC asserts claims for breach of fiduciary duty, failure to monitor fiduciaries, and engaging in transactions that ERISA prohibits.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022). When deciding a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded factual allegations as true and draw all inferences in the light most favorable to the non-moving party. *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020). Rule 8 mandates that a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But a plaintiff's short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a plaintiff is not required to plead detailed factual allegations, it must plead "more than labels and conclusions." *Id.* A simple, "formulaic recitation of the elements of a cause of action will not do." *Id.* "Instead, to survive a

3

motion to dismiss, a claim must be plausible." *Id.* A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

In the ERISA context, a motion to dismiss is an "important mechanism for weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan*, 712 F.3d 705, 718 (2d Cir. 2013) (noting that "the prospect of discovery in a suit claiming breach of fiduciary duty is ominous, potentially exposing the ERISA fiduciary to probing and costly inquiries and document requests about its methods and knowledge at the relevant times"). ERISA "represents a careful balancing between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans." *Fifth Third Bancorp*, 573 U.S. at 424 (internal quotation marks and citations omitted). "Nothing in ERISA requires employers to establish employee benefits plans. Nor does ERISA mandate what kinds of benefits employers must provide if they choose to have such a plan." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996). The Supreme Court has recognized that Congress wanted to avoid creating "a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefits plans in the first place." *Varity Corp v. Howe*, 516 U.S. 489, 497 (1996). Accordingly, the Seventh Circuit has explained, "[w]hen claiming an ERISA violation, the plaintiff must plausibly allege action that was objectively unreasonable." *Divane v. Nw. Univ.*, 953 F.3d 980, 988 (7th Cir. 2020), *vacated and remanded on other grounds sub nom. Hughes v. Nw. Univ.*, 595 U.S. 170 (2022) (*Hughes I*), *and opinion reinstated on reconsideration sub nom. Hughes v. Nw. Univ.*, 63 F.4th 615 (7th Cir. 2023) (*Hughes II*).

## ANALYSIS

### A. Duty of Prudence

ERISA requires plan fiduciaries to manage plans "with the care, skill, prudence, and diligence under the circumstances then prevailing . . . ." 29 U.S.C. § 1104(a)(1)(B). Breach of fiduciary duty claims require a "context-specific inquiry," bearing in mind the "difficult tradeoffs" facing ERISA fiduciaries. *Hughes I*, 595 U.S. at 173, 177. Courts must "give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Id.* at 177.

To state a claim for a breach of the duty of prudence, a plaintiff must plead "(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Albert v. Oshkosh Corp.*, 47 F.4th 570, 579 (7th Cir. 2022) (quoting *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016)). At issue here is the second element. To succeed, Plaintiff must "plausibly allege fiduciary decisions outside a range of reasonableness." *Hughes II*, 63 F.4th at 630.

A plan fiduciary must "monitor all plan investments and remove imprudent ones." *Hughes I*, 595 U.S. at 173 (citing *Tibble v. Edison Int'l*, 575 U.S. 523, 530 (2015) (*Tibble I*)). "If the fiduciaries fail to remove an imprudent investment from the plan within a reasonable time, they breach their duty." *Hughes II*, 63 F.4th at 626 (quoting *Hughes I*, 595 U.S. at 176). The continuing duty to monitor includes two related components. "First, the duty of prudence requires a plan fiduciary to systematically review its funds both at the initial inclusion of a particular fund in the plan and at regular intervals to determine whether each is a prudent investment." *Id.* "Second, the duty of prudence requires a plan fiduciary to 'incur only costs that are reasonable in amount and

5

appropriate to the investment responsibilities of the trusteeship.'" *Id.* (quoting *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197 (9th Cir. 2016) (*Tibble II*)).

Importantly, the "ultimate outcome of an investment is not proof of imprudence." *Albert*, 47 F.4th at 579 (quoting *Divane*, 953 F.3d at 992); *see also DeBruyne v. Equitable Life Assurance Soc'y*, 920 F.2d 457, 465 (7th Cir. 1990). "The process is what ultimately matters, not the results." *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 278 (8th Cir. 2022). The difficulty ERISA plaintiffs face, however, is that they generally lack direct knowledge of the decision-making process that was used by the fiduciaries unless and until discovery commences. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009). As a result, ERISA plaintiffs typically rely upon inferential evidence of imprudence at the pleading stage and attempt to allege facts that support a plausible inference that the Plan fiduciaries failed to exercise care and prudence in selecting and/or monitoring the funds included in the Plan. They do this by identifying other similar investment funds with significantly better rates of returns and less expense. To warrant an inference of imprudence in selecting a particular fund, however, a plaintiff must identify other funds that provide a sound basis for comparison and constitute "a meaningful benchmark." *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018).

As applied here, this means Plaintiff must provide examples of funds that constitute a "sound basis for comparison" with the Fidelity SVF and show it was deficient. *Albert*, 47 F.4th at 581–82. In order for comparator funds to provide a "sound basis for comparison," the funds must "'hold similar securities, have similar investment strategies, and reflect a similar risk profile' to the investments ultimately chosen by the fiduciaries." *Abel v. CMFG Life Ins. Co.*, No. 22-cv-449-wmc, 2024 WL 307489, at *4 (W.D. Wis. Jan. 26, 2024) (quoting *Matousek*, 51 F.4th at 281). In short, Plaintiff must compare apples to apples to prevail. *See Laabs v. Faith Techs., Inc.*, No.

6

20-CV-1534-WCG-SCD, 2023 WL 9321358, at *6 (E.D. Wis. Aug. 30, 2023), *report and recommendation adopted*, No. 20-C-1534, 2024 WL 218418 (E.D. Wis. Jan. 19, 2024).

Defendants argue Plaintiff improperly relies upon hindsight and a cherry-picked assortment of comparators in the FAC. Further, and more fundamentally, Defendants suggest Plaintiff misunderstands the purpose of an SVF. The principal objective of an SVF is capital preservation, not maximization of returns. Stated differently, the focus of an SVF is on asset preservation more than growth. But the mere fact that a fund falls in the SVF category is not enough to show it is comparable to other SVF investments. Not all SVF investments are the same. As the court explained in *Miller v. Autozone, Inc.*, "[s]table value funds are common in large 401(k) plans and are typically structured as: (1) an insurance company general account; (2) an insurance company separate account; or, (3) a synthetic fund." No. 2:19-cv-02779-MSM-tmp, 2020 WL 6479564, at *5 (W.D. Tenn. Sept. 18, 2020). "A synthetic stable value fund," the court further explained, "is a diversified portfolio of fixed income securities and is insulated from interest rate volatilities through wrap contracts with insurers." *Id.* Importantly, "Synthetic stable value funds are generally the least risky because principal is guaranteed by multiple wrap providers and plan participants own the assets of the underlying funds." *Id.*; *see also Austin v. Union Bond & Trust Co.*, No. 3:14-CV-00706-ST, 2014 WL 7359058, at *4 (D. Or. Dec. 23, 2014) (discussing differences between traditional and synthetic GICs).

Defendants maintain that because the alleged comparators listed in the FAC do not reflect similar investment strategies, assets held, risk profiles, and potential rewards as the Fidelity SVF, they are not comparable. More specifically, Defendants contend that there is no allegation that the Fidelity SVF underperformed any other synthetic GIC. Plaintiff chose instead to compare it to other SVF types that share a shortlist of qualities so generic that it describes practically any stable-

value product. Dkt. No. 30 at 20. The court agrees. The comparators cited by Plaintiff are not meaningful benchmarks for the Fidelity SVF. The apples/oranges comparison asserted in the FAC does not raise the inference needed to support a plausible claim that Defendants breached their fiduciary duty of prudence in selecting and maintaining the Fidelity SVF as part of the Plan.

Defendants also observe that, out of the fourteen putative comparator funds in the FAC, Plaintiff only cited one other SVF—the fund offered to participants in the Auto-Owners Insurance Company Retirement Savings Plan (AOIC)—that he alleges outperformed the Fidelity SVF in each year of the putative class period. And even that fund is sufficiently dissimilar to belie any fair comparison, argue Defendants, because the AOIC SVF is a traditional GIC with assets held in the general account of a subsidiary insurer of the Plan sponsor. Defendants assert that the other comparators in the FAC are equally unavailing. The fund in the Shands Plan, for example, was not an SVF—indeed, Plaintiff actually ignored an SVF in the Shands Plan in favor of a different product in that plan—and the non-SVF fund contained limited assets belonging to just forty-three participants and had liquidity restrictions. The court agrees it is not a meaningful benchmark.

More importantly, the remaining comparators change year to year and thus fail to demonstrate the kind of continuing underperformance needed to raise an inference of imprudence. Citing to a rotating cast of funds with higher crediting rates in different years is blatant cherry-picking and cannot support a claim of imprudence. *See Clinton v. Baxter Int'l, Inc.*, No. 25 CV 3368, 2025 WL 3470685, at *3 (N.D. Ill. Dec. 3, 2025) ("Because Clinton's claims rely on allegations of chronic underperformance, his failure to identify a uniform benchmark across the Class Period is fatal."). For this reason, as well, the FAC fails to state a claim that Defendants breached their duty of prudence.

8

Regarding the potential insolvency of one of the Fidelity SVF's wrap insurance providers, it appears Plaintiff has erroneously conflated the actual provider—Prudential Insurance Company of America (Prudential Insurance Co.)—with the allegedly at-risk entity, Prudential Retirement Insurance and Annuity Company (Prudential RIAC). Prudential RIAC was sold by Prudential Insurance Co. to Empower in 2022, as Plaintiff also alleges. *See* FAC ¶¶ 94–107. Plaintiff fails to allege any meaningful connection between a now-Empower-owned entity and the Fidelity SVF's stability, much less any actual defaulted obligation or inability of a plan participant to redeem investments at contract value. More fundamentally, the Fidelity SVF, as a synthetic GIC, affords wrap providers no control over a fund's assets, investment strategy, or crediting rates. Even if there was a connection, the potential insolvency of one out of ten wrap providers is insufficient to render the Fidelity SVF an imprudent choice. Plaintiff never connects the necessary dots to show why a subsidiary's hardships impact the actual insurer's stability. Defendants' motion will be granted as to Count I.

### B. Duty to Monitor

Plaintiff also brings a breach of the duty to monitor claim against the Committee. However, the duty to monitor claim rises or falls with the duty of prudence claim. *See Albert*, 47 F.4th at 583–84. Because the court concludes Plaintiff has failed to state a claim for breach of the duty of prudence, his duty to monitor claim will be dismissed as well.

### C. Prohibited Transaction

ERISA imposes upon plan fiduciaries a duty of loyalty, whereby a plan fiduciary shall not "cause the plan to engage" in certain transactions with a "party in interest." 29 U.S.C. § 1106(a)(1). Section 1002(14)(b) defines a "party in interest" as a "person providing services" to a plan. *Cunningham v. Cornell Univ.*, 604 U.S. 693, 697 (2025). While 29 U.S.C.

§ 1108(b)(2)(A) provides that § 1106 prohibitions do not apply to transactions "contracting or making reasonable arrangements with a party in interest for . . . legal, accounting or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor," *Cunningham* held that § 1108 exemptions are affirmative defenses for which a defendant bears the burden. 604 U.S. at 709. For pleading purposes, it is enough to allege that a plan fiduciary engaged in a transaction proscribed by § 1106(a)(1)(C)—"no more, no less." *Id.*

Defendants argue, as a threshold matter, that Plaintiff lacks standing to bring his prohibited transaction claim. "To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Merely alleging a statutory violation is insufficient; a plaintiff must plead actual injury. *See Cunningham*, 604 U.S. at 708–09. And a plaintiff must have standing for each claim and each form of relief sought. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Defendants argue Plaintiff's "minimal, inconsistent details" regarding Fidelity's transactions with the Plan, FAC ¶¶ 167–71, are insufficient to show a concrete harm and therefore cannot support standing.

The court agrees. Plaintiff's bare allegation that Defendants violated ERISA by allowing contractual payments by plan fiduciaries to third parties in exchange for plan services may be enough to state a claim, but it does not establish the injury necessary to satisfy the Article III requirement of standing. Plaintiff fails to allege any facts suggesting that the fees paid to Fidelity were unreasonably high or more than it would have had to pay a non-party in interest. "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically

10

satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Plaintiff's attempt to state a claim by drawing inferences from a comparison of the Fidelity SVF with other funds fails for the reasons set forth above. Using the same reasoning, the FAC fails to allege the kind of concrete injury in fact needed to establish Article III standing.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss the FAC (Dkt. No. 29) is **GRANTED**. Plaintiff has requested leave to amend in the event the court grants Defendants' motion to dismiss but has not indicated how he would overcome the defects Defendants pointed out in their motion to dismiss. Plaintiff has already amended his complaint once in response to Defendants' previous motion to dismiss. Considering the high costs of litigation, such "cat and mouse game[s] of motions to dismiss followed by a motion to amend," need not be allowed. *Thompson v. Ill. Dep't of Pro. Regul.*, 300 F.3d 750, 759 (7th Cir. 2002). The dismissal is, therefore, with prejudice. The clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 30th day of June, 2026.

William C. Griesbach
United States District Judge